**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JANCE D. GEORGE,         :
                                      Civil Action No. 08-5858 (RBK)

         Petitioner,   :

         v.            :   **OPINION**

JEFF GRONDOLSKY,       :

         Respondent.  :

**APPEARANCES:**

Petitioner <u>pro se</u>
Jance D. George
FCI Fort Dix
Fort Dix, NJ 08640

**KUGLER,** District Judge

Petitioner Jance D. George, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is Warden Jeff Grondolsky.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Because it appears from a review of the Petition that Petitioner is not entitled to issuance of the writ, the Court will dismiss the Petition.  See 28 U.S.C. § 2243.

## I.  BACKGROUND

Petitioner pled guilty, in the U.S. District Court for the Eastern District of Michigan, to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possession of marijuana with intent to distribute, in violation of 18 U.S.C. § 841(a)(1).[2]  On July 19, 2007, Petitioner was sentenced to a term of imprisonment of 51 months, pursuant to which he is currently confined, to be followed by a 3-year term of supervised release.  U.S. v. George, Criminal No. 07-20038 (E.D. Mich.).

Petitioner alleges that he is participating in the Bureau of Prisons Residential Drug Abuse Treatment Program, but that he has been deemed categorically ineligible for early release under the program because of his conviction for being a felon in possession of a firearm.  Here, he asserts that the regulation pursuant to which he has been denied eligibility for early release was promulgated in violation of the Administrative Procedure Act, in that it is "arbitrary and capricious" because the Bureau has

---

[2] Petitioner alleges that his firearm conviction was based upon "constructive" possession of a firearm that was in his home. He alleges that he did not "use" or "carry" the firearm.  In the attachments to the Petition, Petitioner does not dispute that the facts of his conviction involved the possession of four fully-loaded weapons.  Before this Court, also, Petitioner does not dispute that he is guilty of the crime to which he pled guilty.

2

failed to articulate a rationale for its regulation.[3]  Petitioner

asks this Court to order the Bureau of Prisons to release him

upon successful completion of the Residential Drug Abuse

Treatment Program.[4]

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides in

relevant part as follows:

> A court, justice or judge entertaining an
> application for a writ of habeas corpus shall forthwith
> award the writ or issue an order directing the
> respondent to show cause why the writ should not be
> granted, unless it appears from the application that
> the applicant or person detained is not entitled
> thereto.

A pro se pleading is held to less stringent standards than

more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429

U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).

A pro se habeas petition and any supporting submissions must be

construed liberally and with a measure of tolerance.  See Royce

v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney

General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v.

Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399

U.S. 912 (1970).  Nevertheless, a federal district court can

---

[3] Petitioner does not argue that his offense does not fall
within the terms of the regulation or that the regulation
otherwise has been applied to him incorrectly.

[4] It appears that Petitioner has exhausted his remedies
under the BOP administrative remedy program.

3

dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief.  <u>See</u> <u>Lonchar v. Thomas</u>, 517 U.S. 314, 320 (1996); <u>Siers v. Ryan</u>, 773 F.2d 37, 45 (3d Cir. 1985), <u>cert. denied</u>, 490 U.S. 1025 (1989). <u>See also</u> 28 U.S.C. §§ 2243, 2255.

### III.   <u>THE RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM</u>

In 1990, Congress required the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addition or abuse."  Crime Control Act of 1990, Pub.L. 101-647, § 2903, 104 Stat. 4789, 4913 (codified as amended at 18 U.S.C. § 3621(b)).  In 1994, Congress amended the statute to provide an incentive for prisoner participation.  The incentive provision reads:

> The period a prisoner convicted of a nonviolent offense
> remains in custody after successfully completing a
> treatment program may be reduced by the Bureau of
> Prisons, but such reduction may not be more than one
> year from the term the prisoner must otherwise serve.

Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103-322, § 32001, 108 Stat. 1796, 1897 (codified at 18 U.S.C. § 3621(e)(2)(B)).

The Bureau published a regulation to implement the early release incentive one year later.  Congress did not define, by statute, the term "nonviolent offense."  By regulation and Program Statement, the Bureau determined to rely upon the

4

definition of "crime of violence" contained in 18 U.S.C.
§ 924(c)(3).  Thus, the Bureau considered ineligible for early
release those offenders convicted of a felony that "has as an
element the use, attempted use, or threatened use of physical
force against the person or property of another, or ... that by
its nature, involves a substantial risk that physical force
against the person or property of another may be used in the
course of committing the offense."  See 28 C.F.R. § 550.58
(1995); 60 Fed.Reg. 27,692, at 27,695; BOP Program Statement No.
5162.02, § 9 (July 24, 1995).

Following the promulgation of the 1995 regulation, various
Courts of Appeals reached differing conclusions on the question
of whether the Bureau had discretion to further define a crime of
violence as an offense involving a firearm, and thus exclude from
eligibility for the early release incentive those prisoners who
were incarcerated for such offenses.  See generally Lopez v.
Davis, 531 U.S. 230, 234-35 (2001).

In light of the split among the Circuits, the Bureau
promulgated an interim regulation on October 15, 1997, and made
the regulation effective approximately one week prior, on October
9, 1997.  28 C.F.R. § 550.58(a)(1)(vi)(B) (1997); 62 Fed.Reg.
53,690.  The 1997 interim regulation, like the one it superceded,
made ineligible for the early release incentive those prisoners
incarcerated for an offense that involved the possession, use, or

carrying of a firearm.  28 C.F.R. § 550.58(a)(1)(vi)(B) (1997).
The 1997 interim regulation differs from the 1995 regulation by
relying on "the discretion allotted to the Director of the Bureau
of Prisons in granting a sentence reduction to exclude
[enumerated categories of] inmates," 62 Fed.Reg. at 53,690,
rather than purporting to define the statutory terms "prisoner
convicted of a nonviolent offense" or "crime of violence."

     In <u>Lopez v. Davis</u>, the Supreme Court held that the 1997
interim regulation's categorical exclusion of prisoners based on
their involvement with firearms in connection with the commission
of a felony was a permissible exercise of the Bureau's
discretion.

          According to the Bureau, Congress simply "did not
     address how the Bureau should exercise its discretion
     within the class of inmates who satisfy the statutory
     prerequisites for early release."  Because Congress
     left the question unaddressed, the Bureau maintains,
     the agency may exclude inmates either categorically or
     on a case-by-case basis, subject of course to its
     obligation to interpret the statute reasonably, see
     <u>Chevron</u>, 467 U.S., at 844, 104 S.Ct. 2778, in a manner
     that is not arbitrary or capricious, see 5 U.S.C.
     § 706(2)(A).  In this instance, the Bureau urges, it
     has acted reasonably: Its denial of early release to
     all inmates who possessed a firearm in connection with
     their current offense rationally reflects the view that
     such inmates displayed a readiness to endanger
     another's life; accordingly, in the interest of public
     safety, they should not be released months in advance
     of completing their sentences.

          We agree with the Bureau's position. ...

          ... [W]e further hold that the regulation
     excluding Lopez is permissible.  The Bureau reasonably
     concluded that an inmate's prior involvement with

                                6

      firearms, in connection with the commission of a
      felony, suggests his readiness to resort to life-
      endangering violence and therefore appropriately
      determines the early release decision.

Lopez, 532 U.S. at 239-40, 244 (citation and footnotes omitted).

The Court declined to consider the arguments of various amici

that the 1997 interim regulation violated the notice-and-comment

provisions of the APA, as that argument had not been raised or

decided below, or presented in the petition for certiorari.  531

U.S. 230, 244 n.6.

      The commentary accompanying publication of the 1997 interim

regulation recited the history surrounding the Bureau's previous

attempts to regulate in this area, including the 1995 interim

regulation, which attempted to define the term "crime of

violence," and the subsequent split of authority among the

federal courts regarding that regulatory definition.  The

commentary further noted that the Bureau was "publishing this

change as an interim rule in order to solicit public comment

while continuing to provide consideration for early release to

qualified inmates."  62 Fed.Reg. at 53,690.  Nevertheless, the

effect of the implemented interim regulation was to deny program

eligibility to certain categories of inmates confined at that

time and until promulgation of a final regulation.  The

commentary to the interim regulation further provided that

comments on the interim rule were due on December 15, 1997, and

that the comments would be considered before final action was
taken.

Three years later, on December 22, 2000, the Bureau replaced
the 1997 interim regulation with a final regulation, which
adopted the 1997 interim regulation without change.  See 65
Fed.Reg. 80,745.  The final regulation was effective as of
December 22, 2000.  Id.  The commentary accompanying the final
regulation noted that the Bureau had received and considered
approximately 150 comments from individuals and organizations,
138 of which were identical.  Id. at 80,747.  Thus, the final
regulation read, in pertinent part, as follows:

Consideration for early release.

An inmate who was sentenced to a term of
imprisonment pursuant to the provisions of 18 U.S.C.
Chapter 227, Subchapter D for a nonviolent offense, and
who is determined to have a substance abuse problem,
and successfully completes a residential drug abuse
treatment program during his or her current commitment
may be eligible, in accordance with paragraph (a) of
this section, for early release by a period not to
exceed 12 months.

(a)   Additional early release criteria.

(1) As an exercise of the discretion vested
in the Director of the Federal Bureau of Prisons, the
following categories of inmates are not eligible for
early release:

...

(vi) Inmates whose current offense is a
felony:

...

8

(B) That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), ...

5 U.S.C. § 550.58 (2000).  The regulation has remained unchanged since 2000.[5]

The Administrative Procedure Act ("APA") requires, with exceptions not relevant here, that proposed rules be published in the Federal Register, not less than 30 days before the proposed rule's effective date, and provide a period for interested persons to comment on the proposed rule, which comments are to be considered by the agency prior to adopting the rule.  See 5 U.S.C. § 553(b), (c), (d).

Following promulgation of the 1997 interim regulation, the United States Court of Appeals for the Ninth Circuit determined that the 1997 interim regulation was invalid, for failure to follow the notice-and-comment requirements of the APA.  See, Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005).  The 2000 final rule, however, complied with the notice-and-comment requirements.

More recently, the Court of Appeals for the Ninth Circuit has held that the final 2000 rule is invalid, nevertheless, as "arbitrary and capricious" in violation of § 706(2)(A) of the APA, 5 U.S.C. § 706(2)(A), for failure to set forth a rationale

---

[5] BOP Program Statement 5162.04, Categorization of Offenses, provides that inmates convicted of violating 18 U.S.C. § 922(g) are not eligible for early release under the Residential Drug Abuse Treatment Program.

for its categorical exclusion rule.  <u>Arrington v. Daniels</u>, 516

F.3d 1106 (9th Cir. 2008).

In <u>Arrington</u>, the Ninth Circuit held that the Bureau's

promulgation of § 550.58 was "arbitrary and capricious" because

the Bureau failed to state, in the administrative record, an

adequate rationale for its categorical exclusion of felons

convicted of crimes that involved the carrying, possession, or

use of a firearm or other dangerous weapon or explosives.

> A general desire for uniformity provides no explanation
> for why the Bureau exercised its discretion to achieve
> consistency through the promulgation of a categorical
> <u>exclusion</u> rule.  The Bureau's stated desire for
> uniformity could have been accomplished in any number
> of ways.  For example, the Bureau could have achieved
> uniformity by categorically <u>including</u> prisoners with
> non-violent convictions involving firearms, thus making
> them eligible for early release: a result that would
> have been entirely consistent with the statute's aim of
> offering incentives for prisoner participation in
> residential substance abuse programs.  Instead, it
> chose to achieve uniformity by categorically <u>excluding</u>
> such prisoners from eligibility.  Although either
> choice in all likelihood would have withstood judicial
> scrutiny, the Bureau offered no explanation for why it
> exercised its discretion to select one rather than the
> other.  The agency's lack of explanation for its choice
> renders its decision arbitrary and capricious.

<u>Arrington</u>, 516 F.3d at 1114 (emphasis in original) (citation

omitted).  The Ninth Circuit refused to consider the offered

rationale that offenders with convictions involving firearms pose

an increased risk to the public.  The public safety rationale,

the Ninth Circuit concluded, was not stated in the record and was

merely a post hoc rationalization.

It is upon the <u>Arrington</u> decision that Petitioner relies here.

IV.   <u>ANALYSIS</u>

Petitioner contends, pursuant to the <u>Arrington</u> decision, that the 2000 final rule violates the APA proscription against arbitrary and capricious agency action.   Thus, Petitioner contends that his categorical exclusion from consideration for early release, pursuant to the 2000 final rule, is unlawful.

This Court disagrees with Petitioner's position and with the <u>Arrington</u> decision.

The APA's "arbitrary and capricious" standard of review is "narrow."   A federal court may "find that an action is arbitrary and capricious if the agency relied on facts other than those intended by Congress, did not consider 'an important aspect' of the issue confronting the agency, provided an explanation for its decision which 'runs counter to the evidence before the agency,' or is entirely implausible." <u>Rite Aid of Pennsylvania, Inc. v. Houston</u>, 171 F.3d 842, 853 (3d Cir. 1999) (quoting <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43-44 (1983)).   Moreover, a federal court "must 'uphold [an agency's] decision of less than ideal clarity if the agency's path may reasonably be discerned.'" <u>Rite Aid</u>, 171 F.3d at 853 (quoting <u>Motor Vehicle Mfrs. Ass'n</u>, 463 U.S. at 43) (internal citations omitted).   Indeed, "on occasion, regulations with no

11

statement of purpose have been upheld where the agency's purpose was considered <u>obvious and unmistakable</u>."  <u>Citizens to Save Spencer County v. U.S. Environmental Protection Agency</u>, 600 F.2d 844, 884 (D.C. Cir. 1979) (emphasis added) (quoted with approval in <u>Muolo v. Quintana</u>, 2009 WL 82491 (W.D. Pa. Jan. 8, 2009)).

Virtually every court to consider the matter has rejected the rationale of <u>Arrington</u>.  <u>See</u> <u>Snipe v. Dept. of Justice</u>, 2008 WL 5412868 (N.D.W.Va. Dec. 23, 2008) (collecting cases).  The Court of Appeals for the Sixth Circuit has held that the <u>Lopez</u>[6] decision "does directly control" the argument that this challenged regulation is arbitrary.  <u>See</u> <u>Harrison v. Lamanna</u>, 19 Fed.Appx. 342, 2001 WL 1136080 (6th Cir. 2001).  <u>See also</u> <u>Cushenberry v. Federal Medical Center</u>, 530 F.Supp.2d 908, 913 (E.D. Ky. 2008) (same); <u>Robinson v. Gonzaales</u>, 493 F.Supp.2d 758, 763-64 (D. Md. 2007) (same); <u>Chevrier v. Marberry</u>, 2006 WL 3759909, *4-5 (E.D. Mich. 2006) ("There is nothing unreasonable

---

[6] As noted above, in <u>Lopez v. Davis</u>, 531 U.S. 230, 240 (2001), the Supreme Court agreed with the Bureau of Prisons' argument that "the agency may exclude inmates either categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, see <u>Chevron[ v. Natural Resources Defense Council</u>, 467 U.S. 837, 884 (1984)], in a manner that is not arbitrary or capricious, see 5 U.S.C. § 706(2)(A)."  The Court went on, "Having decided that the Bureau may categorically exclude prisoners based on their preconviction conduct, we further hold that the [1997 interim regulation] is permissible.  The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision."  531 U.S. at 244 (footnote omitted).

in the BOP's common-sense decision that there is a significant potential for violence from criminals who possess firearms.").

This Court agrees that the <u>Lopez</u> decision directly controls the conclusion that this challenged regulation, which is identical to the 1997 interim regulation at issue in <u>Lopez</u>, is not "arbitrary and capricious" in violation of the APA.

To the extent <u>Lopez</u> does not directly control the issue, this Court agrees with Chief Magistrate Judge Baxter, of the Western District of Pennsylvania, "that the Bureau chose the categorical exclusion set forth in 28 C.F.R. § 550.58(a)(1)(vi)(B) because of the increased risk that felons with convictions involving firearms might pose to the public, can be reasonably discerned from the administrative record." <u>Muolo</u>, 2009 WL 82491, *9.

> It is a point that is evident from review of the litigation to which the Bureau referred in the Federal Register.  The program statement at the center of that litigation explained that the Bureau originally chose to categorically exclude inmates convicted of drug offense violations who received sentence enhancements for possession of a weapon because the "possession of a dangerous weapon during commission of a drug offense poses a substantial risk that force may be used against persons or property." PS 5162.02, § 9.  Also, the legal decisions issued by the courts of appeals in that litigation showed that the Bureau sought to categorically exclude from the early release benefit certain felons who used guns during their offenses because "the BOP equate[s] gun possession and drug dealing with violence." ...  When the Bureau's effort to categorically exclude such inmates was frustrated by courts of appeals that invalidated its approach, the Bureau amended its regulation so as to achieve the same result through a method that would cure the problems

> identified by those courts.  In sum, the public safety
> rationale justifying the categorical exclusion of
> inmates whose current offense is a felony that involved
> the carrying, possession, or use of a firearm or other
> dangerous weapon or explosive was not a "post hoc"
> rationalization, but was evident in the litigation that
> prompted the amendment to 28 C.F.R. 550.58 (1995) and
> which the Bureau referenced in the Federal Register.

Muolo, 2009 WL 82491, *9 (citations omitted).  This Court agrees

with Judge Baxter's further reflection that the Bureau's public

safety rationale can be reasonably discerned from the other

categorical exclusions contained in the same regulation,

including discretionary exclusions of: "(1) inmates who have a

prior felony or misdemeanor conviction for homicide, forcible

rape, robbery, or aggravated assault, or child sexual abuse

offenses; (2) inmates whose current offense is a felony that has

as an element the actual, attempted, or threatened use of

physical force against the person or property of another;

(3) inmates whose current offense is a felony that by its nature

or conduct presented a serious potential risk of physical force

against the person or property of another; and, (4) inmates whose

current offense is a felony that by its nature or conduct

involves sexual abuse offenses committed upon children.  28

U.S.C. § 50.58(a)(1)(iv), (vi)(A), (C)-(D)."  Muolo, 2009 WL

82491, *10.  Finally, this Court agrees that it is telling that

none of the 150 commenters to the proposed rule challenged the

rule on the basis that there was no public safety rationale to

support the categorical exclusions contained in the rule.  Id.

Thus, the rationale for the categorical exclusion of inmates
whose current offense involved the carrying, possession, or use
of a firearm or other dangerous weapon or explosives can be
reasonably discerned from the administrative record and is not
"arbitrary or capricious."

In addition, this Court is persuaded by reasoning of the
Court of Appeals for the Eighth Circuit, which has explicitly
rejected the <u>Arrington</u> standard that the rational for agency
action, in a rulemaking case such as this, must appear "on the
record."

> The APA provides that a reviewing court must set
> aside a final agency action if it is "arbitrary,
> capricious, an abuse of discretion, or otherwise not in
> accordance with law." 5 U.S.C. § 706(2)(A).  Because
> this is a deferential standard, "the orderly
> functioning of the process of review requires that the
> grounds upon which the administrative agency acted be
> clearly disclosed and adequately sustained." <u>SEC v.
> Chenery Corp.</u>, [318 U.S. 80, 94 (1943)].  "The courts
> may not accept appellate counsel's post hoc
> rationalizations for agency action." <u>Burlington Truck
> Lines, Inc. v. United States</u>, [371 U.S. 156, 168
> (1962)].  However, courts "will uphold a decision of
> less than ideal clarity if the agency's path may
> reasonably be discerned." <u>Bowman Transp., Inc., v.
> Arkansas-Best Freight Sys., Inc.</u>, [419 U.S. 281, 286
> (1974)].
>
> These general principles, like 5 U.S.C.
> § 706(2)(A) itself, apply to both agency rulemaking and
> adjudication that is subject to the APA.  But most
> Supreme Court cases applying these principles-such as
> <u>Chenery</u>, <u>Burlington Truck Lines</u>, and <u>Bowman</u>-involved
> agency adjudications conducted under 5 U.S.C. §§ 556-57
> (or their APA predecessor), which require that agency
> decisions be based on the administrative record, and
> define what that record must include.  This case
> involves agency rulemaking under 5 U.S.C. § 553, which

15

provides only that the agency shall publish notice of the proposed rulemaking, afford interested persons an opportunity to participate, and "incorporate in the rules adopted a concise general statement of their basis and purpose," § 553(c). The Supreme Court has repeatedly emphasized "that generally speaking this section of the Act established the maximum procedural requirements which Congress was willing to have the courts impose upon agencies in conducting rulemaking procedures." Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., [435 U.S. 519, 524 (1978)], and cases cited. Under § 553, an agency determination need not be made "on the record" unless the statute being applied so requires. United States v. Allegheny-Ludlum Steel Corp., [406 U.S. 742, 756-57 (1972)]. Thus, the Ninth Circuit panel in Arrington erred when it disregarded the BOP's public safety rationale simply because the court could not find that rationale in an "administrative record" which the court never defined but seemed to limit to the BOP's Federal Register notice in 2000 finalizing the previously interim rule.

Though rulemaking decisions, which are prospective and legislative in nature, need not be made on a confined administrative record, they still must be reviewed under § 706(2)(A) and "upheld, if at all, on the basis articulated by the agency itself." Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co., [463 U.S. 29, 50 (1983)]; see Menorah Med. Ctr. v. Heckler, 768 F.2d 292, 295 (8th Cir.1985). In State Farm, the Court refused to enforce an agency order rescinding a prior rule, explaining that "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." [463 U.S. at 42.] We have construed State Farm as requiring a fuller explanation when "a new rule reflects a departure from the agency's prior policies." Macon County Samaritan Mem'l Hosp. v. Shalala, 7 F.3d 762, 765-66 (8th Cir.1993). Here, the BOP has consistently sought to implement the same substantive policy in the face of continued judicial resistance. In these circumstances, it is appropriate to discern the reasons for the agency's final rule from the various prior interim rules, Program Statements, and litigation positions reflecting that consistent policy. The Supreme Court

> discerned that public safety was the basis for the
> BOP's exclusion of firearm offenders and concluded that
> the agency's rule was substantively reasonable in
> <u>Lopez</u>, [531 U.S. at 244.]  That, we conclude, is all 5
> U.S.C. §§ 553(c) and 706(2)(A) require.  <u>Accord</u>
> <u>Harrison v. Lamanna</u>, 19 Fed.Appx. 342 (6th Cir.2001)
> (unpublished).

<u>Gatewood v. Outlaw</u>, 560 F.3d 843, 846 -848 (8th Cir.  2009)

(footnotes omitted).  The rationale for the challenged regulation

here is fully stated in the history appended by the BOP to the

1997 interim regulation and the litigation and events referenced

therein.[7]

For all of the foregoing reasons, Petitioner is not entitled

to relief on this claim.

_____

[7] To the extent the Petition could be construed as asserting
a claim that the BOP violated Petitioner's equal protection
rights by continuing to enforce its early release regulations as
written except in the Ninth Circuit, pursuant to the <u>Arrington</u>
decision, the argument is patently meritless.  <u>See</u>, <u>e.g.</u>, <u>Caro v.</u>
<u>Ziegler</u>, 2009 WL 1872977 (N.D.W.Va. June 29, 2009); <u>Mack v.</u>
<u>Eichenlaub</u>, 2009 WL 1849961 (N.D. Fla. June 26, 2009), <u>R&R</u>
<u>adopted</u>, 2009 WL 2365706 (N.D. Fla. June 29, 2009); <u>Carver v.</u>
<u>Chapman</u>, 2009 WL 1651512 (N.D. Tex. June 11, 2009); <u>King v.</u>
<u>Federal BOP</u>, 2009 WL 274948 (D.S.C. March 23, 2009), <u>affirmed</u>,
2009 WL 2337116 (4th Cir. July 30, 2009); <u>Norcutt v. Zych</u>, 2009
WL 514083 (E.D. Mich. March 2, 2009); <u>Minotti v. Whitehead</u>, 584
F.Supp.2d 750, 760 n.12 (D.Md. 2008) (also noting that prisoners
have no due process right to early release).

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be dismissed with prejudice.  An appropriate order follows.


<u>s/Robert B. Kugler</u>
Robert B. Kugler
United States District Judge

Dated: August 26, 2009

18